**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SEDRAK KHACHATURIAN,<br><br>Petitioner,<br><br>v.<br><br>FERETI SEMAIA, ET AL.,<br><br>Respondents. | Case No. 5:26-cv-02078-AJR<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

**I.**

**INTRODUCTION**

On April 23, 2026, Petitioner Sedrak Khachaturian ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. (Dkt. 1 at 2.) On April 30, 2026, Respondents Fereti Semaia, Warden, Adelanto West Immigration and Customs Enforcement ("ICE") Processing Center, Markwayne Mullin, Todd Lyons, Acting Director, ICE, and Field Office Director, Adelanto Office of Detention and Removal, U.S. ICE (collectively, "Respondents") filed an Answer in which they stated, "The Respondents are not presenting an opposition at this time." (Dkt. 8 at 2.) Also on April 30, 2026,

Petitioner filed a Notice of Non-Opposition and Request for Immediate Relief (the "Notice of Non-Opposition"). (Dkt. 9.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 3, 6.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on Petitioner's prior conditions of release (if any condition existed prior to Petitioner's current detention, otherwise release without conditions).**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the Declaration of Sarah R. Hacobian submitted in support of the Petition. (Dkt. 1 at 12-15.) Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so. (Dkt. 8.) Accordingly, the Court considers these facts to be undisputed and conceded by Respondents. See C.D. Cal. L.R. 7-12.

Petitioner entered the United States on or about April 5, 2023, through the San Ysidro Port of Entry after obtaining a CBP One appointment. (Dkt. 1 at 13.) Petitioner entered together with his wife and children, who remain in the United States. (Id.) Petitioner currently has pending immigration proceedings and does not have a final order of removal. (Id.) Petitioner was taken into ICE custody during a routine ICE reporting appointment on or about April 16, 2026, and transported to Adelanto West ICE Processing Center. (Id.)

Prior to being detained, Petitioner had been residing in the community with his wife and two children. (Id.) Petitioner served as an active husband, father, and provider within the household prior to detention. (Id.) Petitioner's sudden detention has caused emotional hardship to his wife and children, who deeply miss the presence and support of their husband and father. (Id.) Petitioner's wife now bears the full burden of childcare, household responsibilities, and financial stress during

Petitioner's confinement.  (Id. at 14.)

Petitioner is currently experiencing significant medical complications related to neck pain radiating into the shoulder and arm.  (Id.)  Specifically, Petitioner's medical records include diagnostic imaging reflecting cervical spine abnormalities, including multilevel degenerative changes, cervical spondylosis, and stenosis.  (Id.)  Petitioner has advised detention medical staff regarding his symptoms and ongoing pain.  (Id.)  Petitioner had minor criminal matters that were resolved without any felony conviction.  (Id.)

Attached to the Complaint is a Notice to Appear dated July 19, 2023.  (Dkt. 1 at 17-20.)  The Notice to Appear alleges that Petitioner is an arriving alien and is subject to removal from the United States pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA").  (Id. at 17, 20.)  Specifically, the Notice to Appear alleges that Petitioner is an immigrant who, at the time of application for admission, was not in possession of a valid unexpired immigration visa, reentry permit, border crossing card, or other valid entry document required by the INA, and a valid unexpired passport, or other suitable travel document, or document of identify and nationality as required under the regulations issued by the Attorney General under Section 211(a) of the INA.  (Id. at 20.)

**III.**

**SUMMARY OF PETITIONER'S CLAIMS**

Petitioner contends in Count One that his continued detention without an individualized neutral custody determination violates his due process rights.  (Dkt. 1 at 7-8.)  Petitioner contends in Count Two that his continued detention without adequate procedural safeguards violates his due process rights.  (Id. at 8)  Petitioner contends in Count Three that in the alternative to relief, he is entitled to a constitutionally adequate bond hearing at which the Government should bear the burden of proving by clear and convincing evidence that Petitioner is a danger or

3

flight risk.  (Id. at 8-9.)  Petitioner contends in Count Four that this Court has jurisdiction to grant relief.  (Id. at 9.)  Petitioner seeks immediate release from custody.  (Id.)  Alternatively, Petitioner seeks a prompt individualized bond/custody hearing before a neutral adjudicator where the Government bears the burden of proof by clear and convincing evidence.  (Id.)  Finally, Petitioner seeks an award of fees and costs.  (Id.)

## IV.
## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention

4

violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights."  Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests."  Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest."  Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was

5

sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

It is undisputed that Petitioner entered the United States on or about April 5, 2023, through the San Ysidro Port of Entry after obtaining a CBP One appointment. (Dkt. 1 at 13.)  It is further undisputed that Petitioner entered together with his wife and children, who remain in the United States.  (Id.)  Petitioner currently has pending immigration proceedings and does not have a final order of removal.  (Id.) Prior to being detained, Petitioner had been residing in the community with his wife and two children.  (Id.)  Petitioner served as an active husband, father, and provider within the household prior to detention.  (Id.)

Based on these undisputed facts, the Court concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on the life he built in the United States since arriving here in 2003.  See, e.g., Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.").  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Therefore, the Court concludes that Petitioner's arrest by ICE on April 16,

2026, without notice or a pre-deprivation hearing violated Petitioner's procedural due process rights.  See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's release from custody.[1]  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy."  Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that

---

[1] It is clear that prior to his detention on April 16, 2026, immigration authorities had allowed Petitioner to remain out of custody.  (Dkt. 1 at 13-15.)  However, it is unclear if Petitioner had been released subject to any condition.  Regardless, the fact that Petitioner was permitted to remain out of custody necessarily means that immigration authorities had concluded that Petitioner would not pose a danger to property or persons and that Petitioner was likely to appear for any future proceeding.  See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.  See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)).  Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

The Court notes that "Respondents are not presenting an opposition argument at this time."  (Dkt. 8 at 2.)  Therefore, Respondents have consented to the relief requested by Petitioner.  See C.D. Cal. L.R. 7-12.  Finally, as to Petitioner's request for an award of attorneys' fees and costs, the Court will consider an application

under the Equal Access to Justice Act requesting costs and reasonable attorneys' fees that is filed within 30 days of entry of final judgment in this action.  See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner from custody on Petitioner's prior conditions of release (if any condition existed prior to Petitioner's current detention, otherwise release without conditions).  Respondents shall also immediately return any confiscated property and documents to Petitioner upon release.  Respondents shall not re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation bond hearing.  The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard.  Respondents shall file a notice of compliance no later than **twenty-four hours from entry of Judgment**.

IT IS SO ORDERED.

DATED:  May 4, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

9